IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                            No. CR 08-1539-MV

FELIPE CANELA and MANUEL ORTIZ,

        Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Manuel Ortiz's Motion for a New Trial, filed May 25, 2009 [Doc. 124]. On May 26, 2009, Co-Defendant Felipe Canela filed a Motion to Join in Defendant Manuel Ortiz's Motion for New Trial [Doc. 126]. As set forth in a separate Memorandum Opinion and Order, the Court has granted Mr. Canela's Motion for Judgment of Acquittal pursuant to Fed. R. Crim. P. 29, and accordingly denies Mr. Canela's Motion for a New Trial as moot. The Court, having considered Mr. Ortiz's Motion for a New Trial, the briefs, relevant law and being otherwise fully informed, finds that Defendant's Motion is not well-taken and will be **DENIED**.

### PROCEDURAL HISTORY

On July 8, 2008, Defendant Manuel Ortiz and Co-Defendant Felipe Canela were charged in a three-count Indictment with conspiracy to possess with the intent to distribute 5 kilograms and more of cocaine and 3, 4 Methylene-Dioxymethamphetamine (MDMA) in violation of 21 U.S.C. § 846, possession with intent to distribute 5 kilograms and more of cocaine in violation of 21 U.S.C. §§ 841 (a)(1) and 841(b)(1)(A) and aiding and abetting in violation of 18 U.S.C. § 2, and possession with intent to distribute 3, 4 Methylene-Dioxymethamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and aiding and abetting in violation of 18 U.S.C. § 2.

On July 15, 2008, Defendants were arraigned on the indictment and they both entered pleas of not guilty.  United States Magistrate Judge Alan Torgerson entered a Discovery Order providing that the government must produce all material required for disclosure pursuant to the constitutional requirements set forth in *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972) [Doc. 27, ¶6].

Trial commenced on May 18, 2009 and the jury returned a verdict of guilty as to both Defendants on all three counts of the Indictment on May 21, 2009.  The central issue at trial was whether Defendants, who were experienced commercial truck drivers, knew that they were transporting illegal drugs in Mr. Ortiz's tractor trailer as they traveled across the country with a large cargo of fresh produce.  Defendants presented the defense that they were unwitting couriers.  Specifically, they maintained that unbeknownst to them, the illegal drugs were hidden among boxes of fresh produce that were stacked onto a pallet in the pre-stage area of the Apio facility in Guadalupe, California, and subsequently loaded onto Mr. Ortiz's tractor trailer.  The jury rejected this defense and consequently found both defendants guilty beyond a reasonable doubt based on the evidence presented at trial.  The Court held in a separate Memorandum Opinion and Order that the evidence presented during the government's case-in-chief, even when viewed in the light most favorable to the government, did not support the conviction of Mr. Canela.  However,  the Court determined that the government did produce substantial evidence to support the conviction of Mr. Ortiz as to Counts 2 and 3 of the Indictment.

At trial, the government presented competent and credible evidence to support its theory that the illegal drugs were loaded onto Mr. Ortiz's truck in Arizona with Mr. Ortiz's knowledge. When taken together, the most compelling evidence of Mr. Ortiz's knowledge included the

following: He owned the tractor trailer in which the drugs were transported; the Apio facility

maintained strict security procedures in the areas where its fresh produce was processed,

palletized and loaded; Mr. Ortiz  signed a document verifying the cargo that was loaded on to the

trailer and he personally installed the load locks designed to secure the pallets while in transit; at

least several hundred miles after Mr. Ortiz had left the Apio facility, he placed a seal and a

padlock on the trailer, security measures Apio did not require; the key to the padlock was in the

sole possession of Mr. Ortiz; Mr. Ortiz decided to take a more southern and slightly longer route

in very high summer temperatures – a decision which increased fuel costs; Defendants stopped

in Phoenix for nineteen hours, which required the use of additional fuel to maintain the air-

conditioning in the truck and the refrigeration levels in the trailer; recorded data of the

temperature in the trailer demonstrated a significant temperature rise while Defendants were in

Arizona, suggesting that the door of the trailer had been opened prior to its departure from

Phoenix; the drugs were found in one of twenty pallets which was specifically located in the

back (and most accessible) part of the trailer; although the band around the pallet containing the

drugs was intact when the product left the Apio facility, it was broken when the drugs were

discovered; and Defendant acted nervously at various times during the trailer inspection at the

Gallup Port of Entry prior to his arrest.

On May 25, 2009, Defendant Manuel Ortiz filed a timely Motion for a New Trial [Doc.

124] pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

## FACTUAL BACKGROUND

A detailed account of the testimony and evidence presented at trial is set forth in the

Court's Memorandum Opinion and Order granting Mr. Canela's motion for judgment of

acquittal and denying Mr. Ortiz's motion for judgment of acquittal on all but Count 1 of the

Indictment.  Defendant's present motion concerns the testimony of two government witnesses,

Doug Larose and Roger Allen.

## I.     Testimony of Doug Larose

Mr. Larose's position and the scope of his testimony is set forth in the above-referenced

Memorandum Opinion and Order.  With respect to Defendant's present motion, the relevant

portion of Mr. Larose's testimony concerned the record that his company, Moody Western

Cooling, kept of the loading of Defendant's truck at the Apio facility.

Mr. Larose testified that Apio had implemented strict security measures in the area of the

facility where produce is processed, palletized and loaded.  On cross examination, in an effort to

support Defendant's theory that some unknown person or persons working in the pre-stage area

of Apio had hidden the drugs among the pallets, defense counsel for Mr. Ortiz attempted to elicit

testimony from Mr. Larose that he did not know who was working in the pre-stage area of Apio

on June 16th and 17th.  Referring to an Apio document known as a "pick slip" (Gov. Ex.  7),

defense counsel attempted to elicit an admission from Mr. Larose that the pick slip did not

accurately record which employees were working during the loading of Mr. Ortiz's truck.  In

response, Mr. Larose stated that while the pick slip was not necessarily accurate, he had another

document listing all the employees who worked on June 16, 2008 in the pre-stage area of Apio

Foods – the area where the boxes of fresh produce were stacked onto pallets and then

subsequently loaded onto Defendant's trailer.  During his testimony, Mr. Larose held papers in

his hand and made gestures indicating the papers contained a list of employees.

At this juncture, the Court convened a bench conference.  Counsel for Mr. Ortiz stated

4

that she objected to Mr. Larose's testimony because it was based on a document that had not been disclosed to the defense.  After reviewing the documents to which Mr. Larose referred, the parties learned that the documents did not in fact contain a list of employees, but instead contained a stamp with a date, time and a list of initials.

Counsel for the government maintained that she had not seen or obtained a copy of Mr. Larose's purported list prior to his testimony at trial.  In addition, she maintained that none of the investigating officers in the case were aware of this document.  She stated that DEA Agent Mark Hyland had interviewed Mr. Larose, during which Mr. Larose made no mention of the list to which he referred during his testimony.

The government further contended that the information in the document was not relevant because the central issue in the case was whether Defendants knew that the drugs were in the trailer, making the identities of the people who actually loaded the trailer immaterial.  Defense counsel responded that the information was highly relevant to the defense's theory that someone in the pre-stage area hid the drugs within one of the pallets and that the information possessed by Doug Larose was potentially exculpatory because Defendant could have interviewed Apio employees and investigated whether or not they had criminal histories.  Defense counsel asserted that for these reasons, the government's failure to disclose Mr. Larose's list violated *Brady v. Maryland*.  Counsel further requested that the Court strike Mr Larose's testimony in its entirety, or in the alternative strike the portion of his testimony concerning the list and his knowledge of who was working in the pre-stage area of Apio on the evening in question.

The Court found that the evidence regarding who packed the pallets was relevant, particularly in light of the extensive testimony regarding security at Apio.  For the reasons

articulated by defense counsel, the Court found that the government's failure to disclose the list

to which Mr. Larose referred in his testimony constituted a *Brady* violation.  The Court

determined that the appropriate remedy was to strike Mr. Larose's testimony regarding who was

working at the pre-stage area in Apio.  Its decision to strike this portion of Mr. Larose's

testimony was, in part, also due to the misleading nature of his testimony.  While Mr. Larose

indicated that the document reflected who was working in the pre-stage area of Apio, the

document did not in fact contain any names of employees, but rather contained initials of some,

but not all of the employees who worked in the pre-stage area on June 16th.

Following the bench conference, the Court issued a curative instruction to the jury which

provided:

> Mr. Larose who is the witness on the witness stand right now, testified that he knew
> who was working in the pre-stage area at the Apio warehouse the night of June 16,
> 2008, to the morning of June 17, 2008.  That testimony should be stricken because
> documents do not reflect who was working in a pre-stage area.  The witness said his
> document referenced who signed the document. That testimony should be stricken.
> Mr. Larose also testified, or referenced, rather, that it could have been as few as
> seven or as many as eleven employees working that night. This statement from Mr.
> Larose will also be stricken. You are instructed to disregard this evidence and not to
> consider it at all in your deliberations in this case.

Partial Tr. of Proc., Cross-Exam. of Doug Larose at 33 [Doc. 134].

In addition, the preliminary instructions cautioned the jury that "[t]estimony that the

Court has excluded or told you to disregard is not evidence and must not be considered."  Partial

Tr. of Proc., Prelim. Jury Instr. at 4 [Doc. 152].   Similarly,  the Court instructed the jury in its

final instructions that it "must completely ignore" testimony that it had been "ordered to

disregard" and which had been "struck [] from the record."[1]  Partial Tr. of Proc., Instr. to Jury at 6 [Doc. 155].

## II.  Testimony of Roger Allen

Mr. Allen's position and the scope of his testimony is set forth in the Court's Memorandum Opinion and Order granting Mr. Canela's motion for judgment of acquittal and denying Mr. Ortiz's motion for judgment of acquittal on all but Count 1 of the indictment.  With respect to Defendant's present motion, the relevant portion of Mr. Allen's testimony arose when the government asked him to describe his role as an expert witness in a previous criminal case out of the Southern District of Texas.  In this case, Mr. Allen had testified on behalf of the defendant, William Ener.  The government asked Mr. Allen if he was aware that following his testimony at trial, Mr. Ener had been acquitted and then arrested for drug trafficking a few weeks later.  Counsel for both defendants immediately objected, and the Court sustained their objections.

Outside the jury's presence, the Court reprimanded the Assistant United States Attorney for asking this question of Mr. Allen.  The Court explained that the prosecutor left the jury with the impression that Mr. Allen was to blame for the acquittal of a guilty individual.  Defense counsel for Mr. Canela moved for a mistrial, whereas defense counsel for Mr. Ortiz requested a limiting instruction.  The Court declined to grant a mistrial, and issued the following limiting

---

[1]The Tenth Circuit has repeatedly asserted the fundamental principle that juries are presumed to follow courts' instructions.  *See United States v. Cardall*, 885 F.2d  656, 668 (10th Cir. 1989) (assumption that juries can and will follow trial court's instructions is fundamental to our system of justice); *Crawley v. Dinwiddie*, 533 F.3d 1226, 1228 n.2 (10th Cir. 2008) (repeating general principle that jury is presumed to follow instructions).  Noting in the record indicates that the jury did not follow the instructions the Court provided.

instruction:

> Ladies and gentlemen, with regard to our last witness, Mr. Roger Allen, you are instructed to disregard the questions by [Assistant United States Attorney Rhonda] Backinoff with regard to Mr. William Ener. The Court has determined that the questions and the information with regard to that gentleman are irrelevant to this case and you are not to consider the questions asked by Ms. Backinoff or any answer given by Mr. Allen. You are not to consider that information, those statements at all in this case.

Partial Tr. of Proc., Discussion of Jury Instr. at 9 [Doc. 153]. In addition to the curative

instruction, the Court also provided preliminary instructions which cautioned the jury as follows:

> Statements, arguments and questions by lawyers are not evidence. . . . [O]bjections to questions are not evidence.  Lawyers have an obligation to their clients to make an objection when they believe that the evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by the Court's ruling on the objection.  If the objection is sustained, ignore the question.

Partial Tr. of Proc., Prelim. Jury Instr. at 4 [Doc. 152].  Finally, the Court instructed the jury as

follows:

> You must make your decision based only on the evidence that you saw and heard in court.  The evidence in this case includes only what the witnesses said while they were testifying under oath, and the exhibits that I allowed into evidence and the stipulations that the lawyers agreed to.  Nothing else is evidence.  The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence.  During the trial, I did not let you hear the answers to some of the questions that the lawyers asked.  I ordered you to disregard some testimony that you saw or heard, and I struck the things from the record.  You must completely ignore all of these things.  Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence.  And you are bound by your oath not to let them influence your decision in any way.

Partial Tr. of Proc., Instr. to Jury at 5-6 [Doc. 155].

## LEGAL STANDARD

### I.     Granting of a New Trial Pursuant to Fed. R. Crim. P. 33

Federal Rule of Criminal Procedure 33 provides: "Upon the defendant's motion, the court

may vacate any judgment and grant a new trial if the interest of justice so requires." The rule

"recognizes the traditional principle that the trial court has broad powers to grant a new trial if

for any reason it concludes that the trial has resulted in a miscarriage of justice." 3 CHARLES A.

WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 551 (3d ed.

2004). On a motion for a new trial the defendant attacks a verdict that is presumptively valid,

and the burden therefore rests on him to show that a new trial ought to be granted. *Id.* When

ruling on a motion for a new trial, the trial court has broad discretion and is free to weigh the

evidence in support of the motion and assess a witness's credibility. *Tibbs v. Florida*, 475 U.S.

31, 37-38 (1982). Nonetheless, a motion for a new trial is regarded with disfavor and should

only be granted with great caution. *United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir.

1999) (citation omitted).

## II.   *Brady* **Claim**

Pursuant to *Brady*, "the suppression of evidence favorable to an accused upon request

violates due process where the evidence is material either to guilt or to punishment, irrespective

of the good faith or bad faith of the prosecution." 373 U.S. at 87. *Brady's* disclosure principles

are not rooted in the Federal Rules of Criminal Procedure, but rather in principles of "fairness

and minimum prosecutorial obligation." *United States v. Bonnett*, 877 F.2d 1450, 1459 (10th

Cir. 1989). They are grounded in the constitutional guarantee of due process of law contained in

the Fifth and Fourteenth Amendments to the Constitution. *See United States v. Agurs*, 427 U.S.

97, 107 (1976). The essence of *Brady* is the proposition that nondisclosure of material

exculpatory evidence violates a defendant's right to a fair trial. *Smith v. Sec'y of New Mexico

Dep't of Corr.*, 50 F.3d 801, 823 (10th Cir. 1995) (citations omitted). Thus, the rule is not

designed to punish the prosecution for misconduct, but to ensure that the defendant receives a fair trial.

To succeed on a motion for a new trial based on a *Brady* violation, the defendant must show: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material. *United States v. Velarde*, 485 F.3d 553, 558 (10th Cir. 2007) (citation omitted). If these three factors are satisfied, a new trial is justified regardless of the prosecution's intentions in suppressing the evidence. *See Giglio v. United States*, 405 U.S. 150, 153-54 (1972).

**DISCUSSION**

Defendant contends that a new trial is required based on "the prosecution's failure to disclose potentially exculpatory impeachment information regarding the list of employees of Apio who worked the 'pre-stage area' the night of June 16, 2008, and based on the prosecution's improper questioning of defense witness Roger Allen." Def.'s Mot. at 1. He roots his argument in the disclosure principles of *Brady v. Maryland* and in a general contention that the government's misconduct at trial requires that the Court grant a new trial.

**I.       *Brady* Claim**

Defendant bases his *Brady* claim on the government's failure to disclose to the defense the document from which government witness Doug Larose testified at trial. Def.'s Mot. at 2, ¶ 4. The Supreme Court has interpreted *Brady* broadly to include a duty on the part of the prosecutor "to learn of any favorable evidence known to []others *acting on the government's behalf* in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995) (emphasis added). The duty to learn of favorable evidence has been interpreted broadly because

of the prosecutor's "special status" within the American criminal justice system. *Strickler v. Greene*, 527 U.S. 263, 281 (1999). It is firmly established in our system of justice that "[t]he United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935).

As stated previously, to prove a *Brady* violation, the defendant must establish that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused, either because it constituted impeachment or exculpatory evidence; and (3) the evidence was material. *Velarde*, 485 F.3d at 558. The Court begins its analysis under *Brady's* first prong, and accordingly examines whether or not the prosecution suppressed evidence.

The Tenth Circuit has held that suppression for purposes of *Brady* does not require a finding of bad faith or any other culpable state of mind on the part of the prosecutor. *Smith*, 50 F.3d at 824; *see also United States v. Montoya*, 716 F.2d 1340, 1345-46 (10th Cir. 1983) (negligent or inadvertent suppression of evidence is nevertheless suppression for *Brady* purposes). Accordingly, irrespective of the prosecutor's actual knowledge of the disputed evidence, it is the responsibility of the prosecutor to learn of the evidence in the possession of any person in "the prosecutor's [] office, as well as law enforcement personnel and other arms of the state involved in investigative aspects of a particular criminal venture." *Smith*, 50 F.3d at 824; *see also United States v. Smith*, 534 F.3d 1211, 1222-23 (10th Cir. 2008) (prosecution suppressed evidence when it failed to disclose report in possession of investigator even though prosecution did not know of report); *United States v. Endicott* 869 F.2d 452, 456 (9th Cir. 1989)

(Bureau of Alcohol, Tobacco and Firearms Agent's knowledge of possibly exculpatory evidence attributed to prosecutor); *Schnieder v. Estelle*, 552 F.2d 593, 595 (5th Cir. 1977) (because state law enforcement officer was part of prosecution team his knowledge was imputed to prosecutor).

Depending on the person's precise role in a criminal case, knowledge or possession of exculpatory evidence on the part of a non-prosecutor actor who is otherwise involved in the government's case can be imputed to the prosecution.  In *United States v. Buchanan*, 891 F.2d 1436, 1442-43 (10th Cir. 1989), the Tenth Circuit held that a Bureau of Alcohol, Tobacco and Firearms ("ATF") agent's knowledge of his romantic relationship with the defendant's ex-wife could be imputed to the prosecution under *Brady*.  In *Buchanan*, the prosecution failed to disclose information to the defense regarding the romantic relationship.  *Id.* at 1439-40.  The ATF agent testified at the defendant's trial as a firearms expert and sat at the prosecution table throughout the trial.  Noting that the ATF agent "worked in close proximity with the prosecution in the preparation of the government's case against [the defendant]," the Tenth Circuit concluded that the agent's knowledge was "imputed to the government, regardless of the prosecutor's . . . lack of knowledge [of the romantic relationship]."  *Id.* at 1442-1443.

In *Smith v. Secretary of New Mexico Department of Corrections*, *supra*, the Tenth Circuit addressed whether knowledge possessed by two separate authorities investigating the defendant's case could be imputed to the prosecution.  The Court concluded that the prosecution's actual knowledge that authorities in two counties conducted two separate investigations rendered it "reasonable to impute the knowledge possessed by each entity to the prosecution under *Brady*."  50 F.3d at 825.  The Court noted that the prosecution's actual knowledge "relieve[d] [it] from having to determine the full extent of when knowledge

possessed by an arm of the State will be imputed to the prosecution." *Id.* at 825.

These cases demonstrate that *Brady* has been interpreted broadly. However, the prosecutor's duty to learn of evidence that might be favorable to the defense is not without limitation. It is limited to those who are *acting on behalf of* the government. *Kyles*, 514 U.S. at 437. In *United States v. Graham*, 484 F.3d 413, 418 (6th Cir. 2007), the Sixth Circuit held that the knowledge of a government witness who failed to timely disclose fifteen boxes of records that he possessed and that were in his personal control, could not be imputed to the prosecution for purposes of *Brady*. Notably, in *Graham*, the witness who withheld records from the defense testified pursuant to a plea agreement with the government. *Id*. at 414. Although the court acknowledged that the prosecution has "a duty to learn of any favorable evidence known to others acting on the government's behalf," it reasoned that the witness in the case before it "[stood] in a very different position in relation to the prosecution than do police officers and other governmental agents." *Id.* at 417. The court explained that the cooperating witness's knowledge of the records could not be imputed to the prosecution because under these circumstances, the Government did not have "sufficient control over [the witness] to transform him into an agent of the prosecution." *Id.* Finding the witness was an independent actor, the court concluded that "because [the witness] was not acting on the government's behalf, the Government cannot be said to have suppressed the fifteen boxes of documents under [the witness's] control." *Id.* at 417-18 (quotation omitted).

In his Motion for a New Trial, Defendant does not dispute that the Government and the investigating officers in the case were unaware of the list to which Mr. Larose alluded during his testimony. He argues, however, that the government "had a duty to learn of the list" and that in

failing to do so, the government breached its obligations under *Brady*.  Def.'s Mot. at 4.  He
asserts that in failing to learn of the list, the government deprived him of "valuable impeachment
evidence for [government] witnesses Agent Mark Hyland and Doug Larose and . . . valuable
exculpatory evidence which would have demonstrated that someone other than Mr. Ortiz was
responsible for packing the pallets and drugs found inside of Mr. Ortiz's trailer."  Def.'s Mot. at
3.  According to Defendant, "[t]he names of employees responsible for packing the pallets
including the one containing the drugs could have provided far more equilibrium to Mr. Ortiz's
defense" to the extent that "Mr. Ortiz would have been able to interview the packers and
investigate their backgrounds."  *Id.* at 7.  Defendant maintains that "Mr. Ortiz's defense that he
was not responsible for placing the drugs within the short pallet found in the trailer would have
been strengthened as people other Mr. Ortiz packed the pallet."  *Id.*

  Defendant has presented no argument nor has he cited any case law that supports the
proposition that Mr. Larose was acting on the government's behalf such that his knowledge may
be imputed to the prosecution.  A review of the relevant case law indeed supports a contrary
proposition.  The fact that Mr. Larose testified on behalf of the government, without more, does
not transform him into an agent of the prosecution.  *See, e.g.*, *Avila v. Quarterman*, 560 F.3d
299, 307-08 (5th Cir. 2009) (government's expert witness did not become part of prosecution
team for purposes of imputing knowledge to prosecution where his role was limited to that of
pathologist); *United States v. Stewart*, 433 F.3d 273, 298-99 (2d Cir. 2006) (ink expert's
knowledge could not be imputed to prosecution where he acted only as expert witness and not as
fully functioning member of prosecution team); *Hill v. Johnson*, 210 F.3d 481, 490-91 (5th Cir.
2000) (rejecting defendant's argument that because expert witness testified on behalf of the

14

prosecution, expert transformed into agent of the state).

Here, unlike in *Buchanan* or *Smith*, the evidence at issue (Mr. Larose's list) was not in the possession of any of the investigating officers in the case. Rather, it was in the possession of Mr. Larose, a civilian witness who merely testified on behalf of the government at trial and to whom both the prosecution and the defense had access.[2] Although DEA Agent Hyland conducted an interview with Mr. Larose and a report of the interview was disclosed to the defense, it is undisputed that Agent Hyland was unaware of Mr. Larose's list. While Defendant baldly asserts that the prosecutor had a duty to learn of the list in Mr. Larose's possession, he has cited no authority to support the proposition that a duty under *Brady* arises where evidence is in the possession of an individual such as Mr. Larose, who is not part of the prosecutorial or investigative team, did not otherwise work in close proximity with the government, and was not under the direction or control of the government.

Mr. Larose's relationship with the prosecutor is even more attenuated than that of the cooperating witness in *Graham*. Unlike in *Graham*, there was no plea agreement in place by which the government might have exerted some level of control over Mr. Larose. If the existence of a cooperation agreement in *Graham* was not sufficient to transform the cooperating witness into an agent of the government, the mere fact that Mr. Larose testified on behalf of the government likewise cannot transform him into an agent of the prosecution. Indeed, the very

---

[2]It is undisputed that defense investigator Gary Ainsworth interviewed Mr. Larose during his investigation of the Apio facility. Through reasonable diligence, Defendant could have learned of Mr. Larose's list. Under such circumstances, the prosecution has not suppressed evidence for purposes of *Brady*. *See, e.g.*, *Rector v. Johnson*, 120 F.3d 551, 560 (5th Cir. 1997) (no *Brady* violation when evidence readily available to defense counsel); *United States v. Grintjes*, 237 F.3d 876, 880-81 (7th Cir. 2001) (*Brady* does not apply to evidence defendant could himself have discovered through due diligence).

fact that Mr. Larose, unbeknownst to the government and entirely at his own initiative, brought the internal Apio documents to the witness stand and referred to them during his testimony, indicates that he was very much an independent actor.  As such, Mr. La Rose's knowledge cannot be imputed to the prosecution.

This review of the relevant case law demonstrates that the government did not violate *Brady* when it failed to disclose evidence that was not in the actual possession of the prosecutor, any of the investigating officers in the case, or any other person "acting on the government's behalf."  *See Kyles*, 514 U.S. at 437.  Defendant has therefore failed to sustain his burden under *Brady* of establishing that "the prosecution suppressed evidence."  Having determined that Defendant failed to establish the first prong of *Brady*, it is unnecessary to address the favorability and materiality prongs of *Brady*.

## II.     Prosecutorial Misconduct in Examination of Roger Allen

In addition to his *Brady* claim, Defendant asserts that a new trial is warranted because confidence in the jury's verdict in this case is undermined by the prosecution's improper questioning of Roger Allen, an expert witness who testified for the defense about trucking industry practices.  It appeared at trial that the questioning of Mr. Allen was improperly designed to leave the impression upon the jury that Mr. Allen testifies on behalf of guilty people who are sometimes acquitted because of his testimony.  Therefore, not only was the information regarding the outcome of Mr. Ener's case and his alleged subsequent arrest, entirely irrelevant – a fact that must have been known to the prosecutor – but it was also prejudicial because of the incorrect impression it left with the jury.  However, in spite of the prosecutor's misconduct in pursuing this line of questioning, the interests of justice do not require a new trial.

Immediately upon defense counsels' instantaneous objections to the improper question regarding Mr. Ener's arrest, the Court sustained the objections.  In addition, shortly thereafter, the Court issued a curative instruction to the jury as set forth above striking all questions and responses with regard to Mr. Allen's involvement in Mr. Ener's case, the outcome of Mr. Ener's case and his subsequent arrest.  *See United States v. Lopez*, 576 F.2d 840, 846 (10th Cir. 1978) (mistrial should not be ordered for improper testimony where court acts swiftly to cure it by sustaining defendants objection and admonishing jury to disregard testimony, unless testimony will create so strong an impression on minds of jurors that they will be unable to disregard it in their consideration of the case).  The Court's preliminary instructions and the instructions presented to the jury at the close of trial provided an additional layer of protection against undue prejudice arising from the improper questioning.  In light of the well-settled principle that jurors are presumed to follow their instructions, *see Cardall*, 885 F.2d at 668, any prejudice resulting from the improper questioning was adequately mitigated by the Court's prompt initial response in sustaining counsels' immediate objections, the Court's curative instruction provided shortly thereafter, and the relevant general instructions provided to the jury.

In the context of the entire trial, it is significant that the prosecutor's misconduct was confined to a single instance.  In light of the weight of the evidence against Defendant, such misconduct was not sufficiently persistent or pronounced to affect the fundamental fairness of the trial.  *See United States v. Ivy*, 83 F.3d 1266, 1288 (10th Cir. 1996) ("We ordinarily will not reverse if the misconduct was merely singular and isolated.  Rather, to warrant reversal, the misconduct must have been flagrant enough to influence the jury to convict on grounds other than the evidence presented.")  *Cf. Berger v. United States*, 295 U.S. 78, 89 (1935) (awarding a

17

new trial after noting that "we have not here a case where the misconduct of the prosecuting attorney was slight or confined to a single instance, but one where such misconduct was pronounced and persistent with a probable cumulative effect upon a jury which cannot be disregarded as inconsequential.").

 The Court concludes that the prosecutor's improper questioning of Mr. Allen, either standing alone or in combination with the misleading testimony of Mr. Larose, both of which were stricken promptly from the record and for which curative and general instructions were provided, do not warrant a new trial.

## CONCLUSION

 For the aforementioned reasons, the Court finds that Defendant did not sustain his burden of demonstrating that the prosecution suppressed evidence in violation of *Brady* and he has not established his entitlement to a new trial pursuant to Fed. R. Crim. P. 33.

 **IT IS THEREFORE ORDERED** that Defendant Manuel Ortiz's Motion for New Trial [Doc. 124] is **DENIED**.  **IT IS FURTHER ORDERED** that Defendant Felipe Canela's Motion to join in Defendant Manuel Ortiz's Motion for a New Trial [Doc. 126] is **DENIED AS MOOT**.

 Dated: this 11th day of January, 2010.

_____
MARTHA VÁZQUEZ
CHIEF U.S. DISTRICT COURT JUDGE